## Grime et al., Appellants, *v.* Department of Public Instruction of Commonwealth of Pennsylvania et al.

Argued October 13, 1936. Before KEPHART, C. J.,
SCHAFFER, DREW, LINN and STERN, JJ.

374

*Charles B. Prichard,* for appellants.

*W. F. Daniels,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellees, were not heard.

OPINION BY MR. CHIEF JUSTICE KEPHART, November 23, 1936:

Appellants, undertakers in the City of Pittsburgh, licensed prior to the passage of the Act of June 10, 1931, P. L. 485, applied for a branch license to the State Board of Undertakers, which held that the Act of 1931 prohibited its issuance, and denied the request. An appeal was taken to the Court of Common Pleas of Dauphin County and the action of the Board was affirmed.

Appellees moved to quash the present appeal, asserting it is barred by the Act. Section 10 gives any applicant or licensee, for thirty days after his license has been refused, suspended or revoked, a right of appeal to the Common Pleas Court of Dauphin County, and provides that the action of that court shall be final.

We reviewed at some length in *White Twp. School Directors' Appeal,* 300 Pa. 422, the law relative to appeals under statutes which control the activities of administrative boards and the responsibility of the court of first instance in such matters. While the legislature has power to limit appellate review upon providing new

statutory remedies, it cannot take away our common law prerogative of reviewing the controversy by certiorari. Where a statute is silent on the right of appeal this Court may review the case in the broadest sense allowed on certiorari; but where an appeal is expressly denied or it is provided that the action of the court below shall be final, our appellate review will be limited to questions of jurisdiction and those relating to the regularity of the proceedings: *White Twp. School Directors' Appeal,* supra; *Twenty-first Senatorial District Nomination,* 281 Pa. 273; *Rimer's Contested Election,* 316 Pa. 342.

Since the undertaking business cannot be engaged in without a license, and the State Board is the only agency empowered to issue licenses, it is appellants' contention that under the Act of 1931 appellants, as old licensees, are entitled to a license for a branch office. The Board denied the application on the ground that it could issue but one license to a single applicant, to be used at one place. It did not assume jurisdiction; but, rather, held it had none. Appellants insist that it has jurisdiction and must exercise it. The question can only be answered by a consideration of the enabling Act.

The State placed the business of undertaking under supervision and for this purpose adopted specific regulations. To a State Board was committed the power to grant or refuse licenses to engage in the business. The Act designates who may receive licenses and what places may be operated. Applicants are a partnership. This partnership wished to secure two licenses, one for each of two locations. It already had one on renewal for its principal establishment and sought a new one for a branch office. The Act authorizes the Board to issue only one license to one person and provides that only one place can be operated by the licensee. Though the partnership consisted of two persons who were duly licensed undertakers, when they made a joint application as a partnership for a license, it was to be treated as a single applicant and a license issued to it could be issued

for only one place. The Board consequently held the Act prevented it from granting to appellants, as a partnership, two licenses, a renewal and a branch license, to operate undertaking establishments at two different places. It did not attempt to broaden the scope of its legislatively-granted powers; its decision construed the limit of such powers.

Does the record presented to this court disclose any jurisdictional grounds for reversal? Appellants requested the Board to issue a license to them. The Board had the exclusive power to issue licenses to undertakers, but it denied having the power to issue the type of license applied for. In so doing it construed its own power under the statute and its interpretation is jurisdictional. While it is true, as a general rule, that an administrative body may interpret the statute which confers upon it duties and functions, and its construction is persuasive upon the courts because it is the body entrusted with the execution of the statute (see *Heath v. Wallace*, 138 U. S. 573; *Logan v. Davis*, 233 U. S. 613) nevertheless such a body cannot enlarge or diminish its own jurisdiction under the statute by erroneous construction, and determinations of this sort are always subject to judicial review. This is strikingly evidenced in the case of *Interstate Commerce Commission v. United States ex rel. Humboldt Steamship Co.*, 224 U. S. 474. In that case the Commissioners refused to require certain Alaskan shippers to file rate schedules because, under their interpretation of the Act, Alaskan commerce was not within their jurisdiction. They based this conclusion upon an erroneous construction of the word "territory" in the Interstate Commerce Act. The party aggrieved sought a writ of mandamus to compel the Commission to act. The Commission pleaded that since it was the body principally charged with the enforcement of the Act, the preliminary question of its jurisdiction thereunder was as much within the scope of its authority as any other question of interpretation which could

arise, and that its decision thereon was binding upon the courts. The Supreme Court of the United States, holding mandamus a proper remedy, said, at p. 484:

"The Interstate Commerce Commission is purely an administrative body. . . . It may exercise judgment and discretion, and, it may be, cannot be controlled in either. But if it absolutely refuse to act, deny its power, from a misunderstanding of the law, it cannot be said to exercise discretion. Give it that latitude and yet give it the power to nullify its most essential duties, and how would its non-action be reviewed?"

And, in *United States ex rel. Louisville Cement Co. v. Interstate Commerce Commission*, 246 U. S. 638, it was held that the action of the Commission in denying its power to pass upon a claim, because of an erroneous conception of the time limitation imposed by the Act, was a jurisdictional interpretation reviewable in mandamus proceedings.

In the present case the Board was not acting within its discretion to grant or refuse licenses under the Act, nor was it merely interpreting a rule of law intended for its guidance. It made a square holding, based upon its interpretation of the statute, that it was without authority thereunder to issue branch licenses. This determination was jurisdictional and consequently subject to review by the courts as to the correctness of the construction placed by the Board upon the statute. However, the judicial tribunal given exclusive jurisdiction of appeals from that body is the Court of Common Pleas of Dauphin County. The appeal comes to us on certiorari, not from the ruling of the Board but from the decision of the court below. The record we examine on certiorari is the record of that court. In such case we are merely concerned with the question as to whether or not it had proper jurisdiction. The law of this State as to what is jurisdiction is well settled. Where a court has jurisdiction over the parties and over the cause of action, it has full power to act in the premises. In the present case

the court below had jurisdiction over appellants who submitted themselves to its authority by following the appellate procedure established by the Act. It had jurisdiction also over the cause of action, which has been defined to relate "solely to the competency of the particular court to determine controversies of the general class to which the case then presented for its consideration belongs": *Skelton v. Lower Merion Township,* 298 Pa. 471, 473; *Welser v. Ealer,* 317 Pa. 182, 184, and see *Koontz v. Messer,* 314 Pa. 434; *Staryeu v. Midouhas,* 299 Pa. 352; *Lackawanna County v. James,* 296 Pa. 225; *Rutherford Water Co. v. Harrisburg,* 297 Pa. 33; (decided under the Act of March 5, 1925, P. L. 23, Sec. 1).

The statute conferred upon the Court of Dauphin County the right to hear appeals from the Board and to finally determine all matters arising in such appeals. This appeal was within the scope of that authority and consequently the court below had full and complete jurisdiction to pass upon the interpretation of the statute by the Board. It was a final adjudication of a question arising on an administrative matter of government that emanated from legislative action unburdened by common law rules. Even if its construction of the statute had been erroneous, it is the final court of appeal in such matters. See *White Township School Directors' Appeal,* supra, at 428.

However, to avoid future conflicts, we will discuss appellants' contention that the legislature intended to distinguish between original and renewal licenses and to give greater rights to the latter in the matter of branch office licenses, though applied for after the passage of the Act of 1931. Appellants have consistently urged that their licensing prior to that Act entitled them to presently enjoy the privilege of conducting branch offices conferred by the Act of June 7, 1895, P. L. 167. See *Undertakers' Licenses,* 24 Dist. 637.

Section 6 of the Act of 1931 authorizes the grant of original licenses to qualified applicants and provides

further: "A license so issued shall authorize the conduct of such business or profession at the particular place of business so designated *and no other,* and by the particular person designated, and *only one license shall be granted to or held by any individual.*"

Section 2 of the Act provides for the renewal of licenses, without examination, to those holding them prior to its passage. Appellants insist that any undertaker licensed prior to the Act of 1931 could, after that Act, secure a branch license without hindrance or prohibition, as inquiry into qualifications of applicants was limited to those licensed as undertakers after the Act of 1931. This is an erroneous conception of the law.

We must consider the Act as a whole and from it determine the real intention of the legislature. We should determine the necessity of the law, the prevailing mischief to be remedied and the object to be attained. The intention is to be taken or presumed to be according to what is consonant to sound reason and discretion. Evidently the mischief felt, and the evil to be corrected, was the presence in the undertaking business, prior to the passage of the Act, of a number of unauthorized persons performing such services under the color of branch licenses whereby they were not so easily detected and their supervision was impossible. It was the intention of the legislature to eliminate this evil, but in so doing they wished to save those licensed undertakers who were then legitimately engaged in branch business. Bearing in mind that the legislature sought to discourage branch offices, section 6 of the Act must be construed to further that purpose by embracing all classes of licenses whether original or renewal. If, as appellants contend, the provision applies only to new licenses awarded upon examination, then while an applicant will not obtain a branch license during the first year of his licensure, he can, upon making "the renewal of his license" required by the statute, apply for and obtain a branch license. This con-

struction is so fallacious as not to require any further comment.

Appellants argue that had the legislature intended the construction adopted by the court below, it should have required the surrender of all existing branch licenses, or a cessation of such business, and expressly denied to those now holding them the privilege of renewal. We need not pass on this contention; the legislature did not so act.

Nor do we attach much importance to the words "renew" and "original." Renewal gave old licensees the privilege they enjoyed at the time the Act was passed, but no other. The renewal license carried forward such branch office rights as they had under their old license. It was no different in effect from any other license with the exception, as stated, that it continued the right to retain branch office licenses lawfully acquired under the old license prior to the passage of the Act of 1931. All old licensees who did not have branch places or, having them, desired additional ones, were denied the right to obtain any new branch licenses. Such an interpretation of the statute is reasonable and necessary to give a consistent effect to all its provisions.

Nor will the latter part of section 6 avail appellants It provides: "This section shall not apply to persons heretofore conducting business under a fictitious name," but this sentence obviously refers to the preceding one, in which it is stated that any undertaker granted a license under this Act shall conduct a business under no name other than the one appearing on the license.

Appellants' second objection is that if the Act is so construed, it violates both the Federal and State Constitutions. The regulation of the business of undertaking is a proper subject for the exercise of the police power (See *Commonwealth v. Hanley,* 15 Pa. Superior Ct. 271; *Commonwealth v. Patsone,* 231 Pa. 46, 50, and cases there cited; Jackson, Cadavers (1936), 443) and it has been regulated for a long period of time. The first

Act was that of 1895, supra. We held the Act of 1931 a valid exercise of the police power with respect to foreign corporations: *Nugent Funeral Home v. Beamish,* 315 Pa. 345. See also *Commonwealth v. Markmann, Jr.,* 114 Pa. Superior Ct. 29, upholding the constitutionality of its penal provisions. The purpose of the Act was not to impose restrictions upon a trade or business-calling as such, but to protect the public health from the dangers attendant upon the inexpert conduct of undertaking by those not qualified by the necessary knowledge of principles of sanitation and disease prevention. While admitting that the business can be regulated under the police power because of its relation to health, appellants insist that the provision denying to the Board the right to issue new branch licenses is unconstitutional because it deprives them of a right guaranteed by the constitution, and is unreasonable, arbitrary and does not further the general purpose of the legislature to protect the public health.

As we have held the business a proper subject for regulation and the Act constitutional with respect to such regulation, in so doing we have determined that no one possesses an absolute right to engage in that business. This is true of any business where the public health is involved.* To uphold appellants' contention

---

* "As stated in *Butcher v. Maybury,* 8 Fed. (2d) 155, 'no person can acquire a vested right to continue, when once licensed, in a business, trade or occupation which is subject to legislative control and regulation under the police power. The rights and liberty of the citizen are all held in subordination to that governmental prerogative, and to such reasonable regulations and restrictions as the legislature may from time to time prescribe. Regulations so prescribed and conformed to by the citizens may be subsequently changed or modified by the legislature wherever public interest requires it, without subjecting its action to the charge of interfering with contract or vested rights. This is elementary.' As further stated, in a note on page 1273 of vol. 8, L. R. A. (N. S.), 'The granting of a license in such cases is merely the means taken by the State, in the exercise of the police power, to regulate and re-

382

as to the right would be contrary to our decision on the Act's constitutionality.

The Act is not arbitrary or unreasonable. It requires applicants for license to pass an examination revealing a definite knowledge of undertaking and, on procuring the license, to conduct the business, which must be done exclusively by those so qualified. Penalties are inflicted for the practice of undertaking by those not licensed. The maintenance of branch offices may or may not have a tendency to enable evasion of the statute. It is not incumbent upon the court to determine whether or not such a provision is necessary to carry out the principal purpose of the Act. It is germane to the general purpose, and is in aid of public health; the legislature therefore must determine its necessity or expediency: *Silz v. Hesterberg*, 211 U. S. 31; *Commonwealth v. Stofchek*, 322 Pa. 513; 2 Cooley, Constitutional Limitations (8th ed. 1927), 1228.

In *Nolan v. Jones*, 263 Pa. 124, at 128, it was said: "A statute enacted for the protection of the public health, safety or morals, can be set aside by the courts only when it plainly has no real or substantial relation to those subjects, or is a palpable invasion of rights secured by the fundamental law." The Act's purpose is to prevent the use of one license for several establishments, to protect the public from the lack of skill of unlicensed operators acting under the nominal supervision of licensed undertakers. It is true that in some cases the licensee might be able to give full and complete attention to the

strict the engaging in certain professions and occupations for the public good, and confers no right whatever, in the way of a contract with the State, upon the licensee. He takes the same subject to the right of the State, at any time that the public demands, to make further restrictions and regulations thereto; and, if such restrictions and regulations are reasonable, they will be upheld, even though they actually prohibit some people from further engaging in such occupations or professions under a license previously granted' ": *Harris v. State Board of Optometrical Examiners*, 287 Pa. 531, 538-539.

conduct of the business of branch offices, but it is also possible to conceive that such supervision might, if too widely extended and diffused, be impracticable. This possibility is sufficient to render the practice dangerous. It is not an unreasonable and arbitrary exercise of the police power to require that each undertaking establishment be personally conducted by a licensed undertaker. It is not a question here of prohibiting the mere ownership of two establishments by one person; the question is whether or not one person may conduct and operate two or more subsidiary branches.

A somewhat similar provision of the Act of March 30, 1917, P. L. 21, as amended, that an optometrist may not open more than one office unless he has a licensed practitioner in charge of the branch office, was held a reasonable regulation of that profession in *Harris v. State Board of Optometrical Examiners,* supra. While that Act is not strictly analogous to the present one, because it expressly permitted the operation of branch offices in charge of a regularly licensed optometrist, it was the legislative purpose ". . . to prevent . . . the indiscriminate opening of offices nominally under the protection of a license, but in reality in charge of one who is not registered": *Harris v. State Board of Optometrical Examiners,* supra, at page 538.

Although such branch offices may be conducted in some instances without injury to the public health, the business is replete with possibilities for the evasion of the licensing provisions or conduct thereunder. The legislature is acting within its power in prohibiting it. A thing not in itself injurious may nevertheless fall under the ban of legislative prohibition because it affords opportunities for the frustration of a purpose well within the admitted governmental power. See *Purity Extract Co. v. Lynch,* 226 U. S. 192; *Commonwealth v. Stofchek,* supra. So long as there is some relation between the prohibition against the licensing of new branch offices and the regulation of the business of un-

dertaking to protect the public health, the legislature has the power to determine whether or not such prohibition is desirable. "In every instance, the details of regulation are for the legislature to determine, not subject to judicial rejection, unless so palpably unreasonable as to suggest that their 'real object is not to protect the community, or to promote the general well-being, but, under the guise of police regulation, to deprive the owner of his . . . property, without due process of law' [Citing *Mugler v. Kansas*, 123 U. S. 623.]": *Nolan v. Jones*, supra, at 129.

Appellants also urge that if the enjoyment of branch licenses is denied only to those who had not obtained them prior to the passage of the Act, the provision is discriminatory and a deprivation of their rights under the Fourteenth Amendment to the Federal Constitution. This conclusion is not tenable. It is well settled that the Fourteenth Amendment "does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and a later time": *Sperry & Hutchinson Co. v. Rhodes*, 220 U. S. 502, 505. It is not improper to provide that those who have obtained a privilege prior to the passage of a statute shall retain it although the same privilege is denied to those seeking it thereafter. The legislature desired to protect those who had already availed themselves of the privilege of obtaining them. The appellants had no unqualified right to have a branch license issued to them prior to the passage of the Act of 1931; such licenses were issued at the discretion of the Board. The Act of June 10, 1931, P. L. 485, prohibits the granting of future branch licenses to any class of licensees and this provision is constitutional as a proper exercise of the police power of the legislature, as an aid to the regulatory provisions and the general purpose of the Act.

The motion to quash the appeal is dismissed, and the decree of the court below is affirmed at the cost of appellants.