## Wetzel & Son, Inc., v. State Board of Undertakers et al.

*Charles S. Shotz*, for complainant.

*A. J. Levy*, Special Deputy Attorney General, *George J. Barco*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for respondents.

WICKERSHAM, J., March 10, 1941.—This matter is before us on preliminary objections on the part of defendants to complainant's bill in equity.

The bill sets forth, inter alia, that complainant is a licensed undertaker conducting its business at 4710-12 North Fifth Street, Philadelphia, and that on different occasions complainant employs the use of the chapel in the home of Walter Wetzel at 6902 Rising Sun Avenue, Philadelphia, for the conduct of funeral services; that both addresses are listed under complainant's name in the classified section of the Philadelphia telephone directory; that complainant has been notified by defendant board to correct its telephone listing by omitting 6902 Rising Sun Avenue from the said listing in the

next issue of the telephone directory, and a refusal to do so will cause the suspension or revocation of its license. The bill also avers complainant has had branch establishments since January 5, 1925; that the order of defendant above mentioned is discriminatory and deprives it of the benefit of the equal protection of the laws of this Commonwealth guaranteed by the Fourteenth Amendment of the Constitution of the United States; and that sections 6 and 13 of the Act of June 10, 1931, P. L. 485, section 13 (a) of the amending Act of June 21, 1935, P. L. 398, and section 14 (a) of the amending Act of July 19, 1935, P. L. 1324, are unconstitutional since they violate article III, sec. 3, of the Constitution of the Commonwealth because in none of the acts aforementioned is the purpose to prohibit the issuance of branch licenses clearly expressed in the titles. The bill prays for an injunction restraining defendant board from interfering with its business and its telephone listing.

Defendants filed preliminary objections to the bill of complaint alleging complainant is not entitled to the relief sought because every legal question raised has been decided by the appellate courts of this Commonwealth; that the facts set forth in the bill are not sufficient to sustain the prayers thereof; and under authority of Grime et al. v. Department of Public Instruction et al., 324 Pa. 371, Buffalo Branch, Mutual Film Corp. v. Breitinger, 250 Pa. 225, and Commonwealth v. Markmann, 114 Pa. Superior Ct. 29, the bill should be dismissed.

### Discussion

The only question here raised seems to be whether the State Board of Undertakers has the authority under its enabling acts to direct the discontinuance of the advertising by a funeral director of a place of business for which said funeral director does not hold a branch license.

The bill avers in paragraph 10 that the place of business of complainant is 4710-12 North Fifth Street, Philadelphia, and in paragraph 11 states: ". . . only on different occasions your complainant employs the chapel in the premises 6902 Rising Sun Avenue for the conduct of funeral services." Nowhere is it averred that complainant has a branch office license for the Rising Sun Avenue address, or that the said place is being used in the funeral directing business of the complainant by virtue of any legal right so to do.

The said Act of 1931 provides in section 6:

"Original licenses . . . shall be granted only to individuals . . . and shall specify by name the person to whom it is issued, and shall designate the particular place at which the business or profession of undertaking shall be carried on. A license so issued shall authorize the conduct of such business or profession at the particular place of business so designated and no other . . ."

And section 13 provides:

"The provisions of this act shall not be construed as preventing the conducting of the business or profession of undertaking by a corporation heretofore licensed; . . . and no branch licenses shall hereafter be granted any corporation."

It is apparent from the above quotations from the Act of 1931 that individuals or corporations cannot carry on their business in any place other than the place specifically designated on the actual license, and no branch licenses shall be granted any corporation. In Grime et al. v. Department of Public Instruction et al., 324 Pa. 371, it was held:

"Under the Act of 1931, the board is without authority to issue a branch license to one who was duly licensed as an undertaker before the passage of the Act but who did not then possess a branch office license; a renewal license carries with it only such branch office

rights as were acquired under the old license prior to the passage of the Act of 1931.

"The latter part of section 6 of the Act of 1931, which provides that the section shall not apply to persons heretofore conducting business under a fictitious name, refers only to the prior provision in the section that any undertaker granted a license shall conduct a business under no name other than the one appearing on the license.

. . . . . . . .

"Where a business is subject to legislative regulation under the police power, no person possesses an absolute right to engage in such business.

"Section 6 of the Act of 1931, in prohibiting the granting of future branch licenses, is not unconstitutional on the grounds that it is unreasonable, arbitrary, and does not bear a relation to its purpose to regulate the business of undertaking for the protection of the public health.

. . . . . . . .

"The Act of 1931, in denying branch licenses only to those who had not obtained them prior to the passage of the Act, is not discriminatory and does not deprive such persons of rights under the Fourteenth Amendment to the Federal Constitution."

It was further stated (p. 383):

"Although such branch offices may be conducted in some instances without injury to the public health, the business is replete with possibilities for the evasion of the licensing provisions or conduct thereunder. The legislature is acting within its power in prohibiting it. A thing not in itself injurious may nevertheless fall under the ban of legislative prohibition because it affords opportunities for the frustration of a purpose well within the admitted governmental power. . . . So long as there is some relation between the prohibition against the licensing of new branch offices and the

regulation of the business of undertaking to protect the public health, the legislature has the power to determine whether or not such prohibition is desirable."

There are numerous authorities which indicate that administrative bodies which are concerned with the public health have a right to enforce the evident intention of the legislature in order that the community may best be served. In Buffalo Branch, Mutual Film Corp. v. Breitinger, 250 Pa. 225, it was held:

"Nothing but a clear violation of the Constitution— a clear usurpation of power prohibited—will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void.

"The police power of the Commonwealth extends to all regulations affecting the health, good order, morals, peace and safety of society, and under it all sorts of restrictions and burdens may be imposed, and when they are not in conflict with any constitutional principles, they cannot be successfully assailed in a judicial tribunal."

In Commonwealth v. Markmann, 114 Pa. Superior Ct. 29, it was held:

"The Act of June 10, 1931, P. L. 485 is constitutional in that it is a proper exercise of the police power and its title is sufficiently clear to put any one interested on notice."

We are not concerned here with an undertaker or undertaking corporation complaining of the failure of the State Board to grant a branch office license, but rather with an undertaker corporation (complainant) objecting to the State Board of Undertakers enforcing its very basic duty, namely, of compelling a licensee with only one license from engaging in business in more than one place. The complainant has been requested to cease and desist advertising one of the places where its funeral business was being conducted for which it had no branch office license. If the complainant felt

the board was unwarranted in illegally making such a demand, it could very easily have refused to comply with this order, whereupon the board, in the ordinary course of procedure, would have cited the present complainant for a hearing, to determine whether or not its refusal to comply with the said order would be a basis for further action by the board. If this action (citation) would have been decided against complainant, it would have its remedy at law, because the act specifically allows an appeal from any action of the board. We think, therefore, there is a sufficient remedy at law for the complainant to cover each and every averment and prayer in the bill.

We are of opinion, therefore, under the authorities above quoted, the bill of complaint must be dismissed.

And now, March 10, 1941, it is ordered, adjudged, and decreed that the preliminary objections to complainant's bill are sustained and the bill is dismissed, at complainant's cost.

WICKERSHAM, J., October 27, 1941.—This matter comes before us on exceptions of complainant to our opinion filed March 10, 1941, in which we dismissed the bill of complaint.

Complainant excepts: (1) To our finding that complainant conducted its undertaking business at 6902 Rising Sun Avenue, Philadelphia; (2) to our conclusion that complainant has an adequate remedy at law and therefore equity has no jurisdiction in this case; and (3) to our order of March 10, 1941, sustaining the preliminary objections to complainant's bill and dismissing the bill at complainant's cost.

In the opinion above referred to we stated, inter alia:

"We are not concerned here with an undertaker or undertaking corporation complaining of the failure of the State Board to grant a branch office license, but rather with an undertaker corporation (complainant) objecting to the State Board of Undertakers enforcing its very basic duty, namely, of compelling a licensee

with only one license from engaging in business in more than one place. The complainant has been requested to cease and desist advertising one of the places where its funeral business was being conducted for which it had no branch office license. If the complainant felt the board was unwarranted in illegally making such a demand, it could very easily have refused to comply with this order, whereupon the board, in the ordinary course of procedure, would have cited the present complainant for a hearing to determine whether or not its refusal to comply with the said order would be a basis for further action by the board. If this action (citation) would have been decided against complainant, it would have its remedy at law, because the act specifically allows an appeal from any action of the board. We think, therefore, there is a sufficient remedy at law for the complainant to cover each and every averment and prayer in the bill."

In the bill of complaint it is admitted that complainant's license for conducting the undertaking business is for premises 4710-12 North Fifth Street, Philadelphia; and that 6902 Rising Sun Avenue, Philadelphia, is the residence of Walter Wetzel, its president, also a licensed undertaker. The bill also states, in paragraph 11:

"That the embalming, care and preparation of dead human bodies for burial by complainant, are performed at 4710-12 North 5th Street only; that only on different occasions your complainant employs the chapel in the premises 6902 Rising Sun Avenue for the conduct of funeral services. The morgue, display room, and offices of your complainant are located in the establishment at 4710-12 North 5th Street, Philadelphia."

Thus it is also admitted that the premises at 6902 Rising Sun Avenue are used—occasionally—in connection with complainant's undertaking business. No branch license was sought by complainant to conduct its business at two different places as far back as 1925

when the corporation was formed and license issued, though it admittedly (paragraph 20) continuously advertised its business in the Philadelphia telephone directory at both addresses as follows:

"WETZEL & SON, INC.

WETZEL & SON

4710-12 N. 5th Street

6902 Rising Sun Avenue."

The bill is silent as to whether Walter Wetzel, president of complainant corporation, has an undertaking license for his residence at 6902 Rising Sun Avenue, and, therefore, in the absence of such allegation, we assume he does not have such license.

The bill of complaint also contains the following paragraphs:

"7. That . . . on or about July 1917, the said John H. Wetzel, deceased, and his son, Walter Wetzel, both of whom had theretofore conducted their own individual establishments . . . formed a copartnership under the name, style and designation of Wetzel & Son, and carried on said partnership at the two places aforementioned until June 1924.

"8. That . . . on or about December 1923, Walter Wetzel moved the establishment . . . to 4710-12 North 5th Street, Philadelphia; John H. Wetzel, deceased, in April 1922, moved his establishment . . . to 6902 Rising Sun Avenue, Philadelphia, at which two places aforementioned both still carried on their copartnership under the name of Wetzel and Son until June 1924, when they dissolved the said copartnership . . . Walter Wetzel acquired the right, by the terms of their agreement of dissolution, to continue the use of the name—Wetzel & Son."

The bill is also silent as to whether the copartnership of Wetzel & Son was ever registered as such with the Undertaking Board, and in the absence of such allegation we assume it was not so registered. In this con-

nection we refer to the Act of April 24, 1905, P. L. 299, amending the Act of June 7, 1895, P. L. 167, in force at the time the Wetzel & Son copartnership was formed in 1917, and also in force at the time this complainant was first licensed in 1925. This act provides in section 5, inter alia:

"It shall be the duty of any person, persons or corporation engaged in the business of undertaking . . . to cause, within one year, after the passage of this act, his, her, their, or its name or names, residence and place of business, to be registered with said board . . . ."

And the Act of June 10, 1931, P. L. 485, specifically states, in section 6: "A license so issued shall authorize the conduct of such business or profession at the particular place of business so designated and no other . . . ."

It is complainant's contention that it is not bound by the recent Acts of 1931 and 1935 regulating the business of undertaking, since its license was issued in 1925, long before said acts were passed; and that prior to the passage of the said acts no act of assembly regulating the business of undertaking contained any prohibition against the listing by an undertaker of places other than those mentioned in his license. As to this latter contention we refer to the above-quoted Act of 1905 providing that persons or corporations engaged in the business of undertaking must register their place of business with the board. Complainant's business place was registered as 4710-12 North Fifth Street. In advertising one's business we think a true state of the facts must appear to the public, and a true state of facts did not appear to the public when complainant listed two addresses for the conduct of its business when it was licensed to conduct its business at one address.

Complainant relies on the case of Grime et al. v. Department of Public Instruction et al., 324 Pa. 371,

262

which concerned the granting of branch licenses after the Act of 1931 was passed. We think this case is not controlling in the instant case as complainant never had a branch license and never sought one.

In the above quotation from our former opinion it was pointed out that, if complainant were displeased with the request of the board that it cease advertising both places of business, it could refuse to comply with that request, which action would in all probability lead to further proceedings before the board where the matter could be determined; then if complainant be dissatisfied with the determination of the board it could appeal to this court. We are, therefore, of opinion the exceptions must be dismissed.

And now, October 27, 1941, the exceptions of complainant are dismissed, and our order filed March 10, 1941, dismissing the bill of complaint, is affirmed.