## Ontario Tribe's License

*E. G. Scoblionko*, for appellant.

*M. F. Hatch*, for Liquor Control Board.

IOBST, P. J., and HENNINGER, J., June 30, 1941.—Appellant is an unincorporated beneficial society and social club with headquarters in the Borough of Fountain Hill, Lehigh County, Pa. On January 3, 1941, its ap-

plication for a club liquor license was refused by the Pennsylvania Liquor Control Board for the sole reason that the quota for Fountain Hill under the Act of June 24, 1939, P. L. 806, 47 PS §744-1001, et seq., had already been filled.

Appellant appealed from that order of refusal on March 24, 1941, upon the assurance of the Pennsylvania Liquor Control Board that the hearing provided for by section 7 of the Beverage License Law of May 3, 1933, P. L. 252, as amended, 47 PS §90, would be futile. We held on March 25, 1941, that the appeal was premature, no hearing having been held and that, if the Liquor Control Board persisted in its refusal to hold a hearing, appellant's remedy was to the Dauphin County court to compel the board to grant a hearing and that our jurisdiction, on appeal, arose only from refusal *after* hearing. The board thereupon granted a hearing, which was held April 18, 1941, and in an opinion filed May 8, 1941, again refused the license for the reason already given, from which refusal the present appeal was taken.

We note that the refusal of a license was not in the exercise of the board's discretion under section 403 of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended, 47 PS §744-403, which reads in part as follows:

". . . the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club, may, in its discretion, issue a license . . ."

The issuance or refusal of a license, therefore, depends upon our determination of the accuracy of the board's interpretation of the law and we are not invading the field of its discretion.

We have carefully weighed all of the decisions upon this subject which were available to us and are forced to the conclusion that the board had no authority to grant a club license to appellant.

The language of each clause of the 1939 act restricting restaurant and club licenses to a ratio of population is without difficulty.

The first clause of section 2 of said act, 47 PS §744-1002, reads:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs."

It clearly prohibits any retail licenses whatever above a certain quota. The quota is arrived at by counting up all retail licenses, whether for liquor or for malt and brewed beverages, whether for restaurants or eating stands, and excepting only in the calculation the licenses of hotels, as defined in the act, and those of clubs.

The words "exclusive of licenses granted to hotels, as defined in this act, and clubs", must modify the word "licenses", used at two other places in the clause, once as the subject of the verb "shall be granted" and once in the phrase "in excess of one of such licenses, of any class".

If it were to modify that word "licenses", which is the subject of the sentence, it should for clarity have followed it and the word "excepting" would have been much more appropriate than "exclusive of". Furthermore, the word "granted" following the disputed word indicates existing licenses rather than those for which an application might be made.

We are convinced, therefore, that the phrase given modifies the second word "licenses" and that the clause, instead of reading "No licenses, exclusive of licenses granted to hotels and clubs, shall hereafter be granted, etc.", was intended to read, "No licenses shall here-

after be granted in excess of one of such licenses, exclusive of licenses granted to hotels and clubs, for each one thousand inhabitants, etc." That interpretation was given it by Judge Knight in Pottstown Veterans Association License, 36 D. & C. 593, by Attorney General Reno in an opinion entitled Club Liquor License Quota, 36 D. & C. 225, by Judge Sheely in Harrisburg Country Club Appeal, no. 342, January sessions, 1941, Dauphin County Quarter Sessions Court, and impliedly in Seagrave Social Club's License, 37 D. & C. 575, and in the three or four other unreported cases upholding the quota restriction against clubs.

There is no difficulty with the meaning of the last clause in this section of the 1939 act (47 PS §744-1002), ". . . but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded". It must be and is conceded that no matter how one interprets the first clause, fixing a quota, that quota has been exceeded in this case. In that respect, this case appears to be distinguishable from a recent case decided by Judge Hipple of Elk County (Horton Township Sportsmen's Club, 41 D. & C. 261) in which the definition of a hotel and the equalling instead of the exceeding of a quota were controlling.

Even if the first clause were interpreted to exclude clubs from the prohibition rather than from the computation therein provided, this last clause would, in clear and unmistakable language, prohibit the granting of club licenses where the quota is exceeded. If the two clauses were contradictory—and we do not believe they are—then under section 64 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §564, whenever, in the same law, several clauses are irreconcilable, the clause last in order of date or position shall prevail: Commonwealth v. One Studebaker Sedan, 140 Pa. Superior Ct. 197.

The 1939 act under consideration is, under section 62 of the Statutory Construction Act, 46 PS §562, in pari materia with the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, 47 PS §744-1, et seq. and, therefore, the two acts are to be construed together. Subsection (a) of section 3 of article I of that act, as amended, 47 PS §744-3(a), provides:

"This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

Since the legislature considered the licensing of clubs necessary for the public welfare, then the Act of 1939 restricting the issuance of licenses must be construed liberally for the public welfare and strictly against those seeking the privilege of retailing liquor. So interpreting the Act of 1939, the clear provision in the last clause against licensing clubs must prevail over any doubt that might be created by the first clause.

The argument most strongly pressed upon us is that to interpret it to forbid the issuance of licenses to clubs would produce an absurdity. For the reasons hereinafter given, we see no such absurdity, but even so, such an absurdity could as logically be resolved by striking out the words "and clubs" in the first clause as by inserting them in the second.

It is hard to find "intention" in the acts of a legislature pressed for time and beset by conflicting interests. We do not have before us the evidence upon which Judge Sheely apparently acted in the Harrisburg Country Club case, supra, that the words "and clubs" were inserted by the conference committee. Whether they were inserted deliberately in the first clause and either deliberately or inadvertently omitted in the last clause, we cannot say. Under section 53 of the Statutory Con-

struction Act of May 28, 1937, P. L. 1019, 46 PS §553, we may add words and phrases only when necessary to the proper interpretation of a law and then only when they do not conflict with its obvious purpose and intent and when they do not in any way affect its scope and operation. For us to add the words "and clubs" in the last clause would be an obvious interference with the legislative prerogative. Certainly one of the first rules of statutory construction is that when the words of a law are clear and free from all ambiguity the letter of it is not to be disregarded under the pretext of pursuing its spirit (section 51 of Statutory Construction Act of 1937, 46 PS §551), and that the legislature intends the entire statute to be effective and certain: subsection (2), sec. 52, 46 PS §552. Unless, therefore, under subsection (1) of section 52 of that act, 46 PS §552, providing that courts may presume "That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable" we find this act absurd, impossible of execution, or unreasonable, we must give effect to it as passed by the legislature.

The presence of the words "and clubs" in the first clause and not in the last works to the detriment of appellant's case rather than to its advancement, for it shows that the legislature had club licenses under consideration and it must be presumed to have intended to exclude them from the computation of a quota and to include them in the prohibition against obtaining new licenses.

There is a valid reason for basing a quota upon the ratio of restaurant and eating places to population, regardless of the number of extant club licenses. A club is an exclusive organization and, no matter how many club licenses there may be in existence, it is conceivable that large sections of the population may not be served by them. It would be unfair to this portion of the population to be deprived of the privileges enjoyed by their more aristocratic or more sociable neighbors. There is

also a theory that restaurants are for the benefit of the traveling public, who may not belong to a convenient club.

It has been pointed out as an absurdity that, if the principle of license quotas applied to clubs is sound, the act has made no provision for the situation where the license quota of restaurants has not been filled and that in that case an infinite number of club licenses could be granted. This argument overlooks two points. First, an act of legislature may, in the eyes of the courts, be unwise, unfair, and arbitrary, without being absurd or unworkable. Second, there is already a curb on the number of club licenses in that the Liquor Control Board may, in its discretion, refuse such licenses. Clearly, an overabundance of club licenses in a community would be a valid use of discretion on the part of the Liquor Control Board in refusing further club licenses. So the dire results prophesied in cases where the quota is not exceeded are not likely to occur.

On the other hand, it cannot be denied that there is a direct relationship between the public welfare and the ratio of licenses of all descriptions to population. An excessive number of licensees always has encouraged law violation in the competition for business and certainly the different types of licensees compete with one another. In the act under consideration, the legislature has recognized this principle and has exercised its authority over the discretion of the Liquor Control Board by forbidding new club licenses when there are sufficient other licensees to serve the community. That was its privilege.

We need not seek reasons for the exclusion of hotels from the operation of the quota act. Suffice it to say that the legislature in its wisdom saw fit to exclude them. That exception does not work to appellant's benefit.

Reference has been made in the appeal petition to the constitutionality of the quota act under consideration.

Any such question has been conclusively decided against appellant by our Superior Court in Kester's Appeal, 140 Pa. Superior Ct. 293, 297.

The only adverse decision available to us was by Judge Hoban of Lackawanna County in In re Appeal of Lithuanian Beneficial Association, no. 284, May sessions, 1940, Q. S. Lackawanna Co. Judge Hoban calls attention to the possibility of an infinite number of clubs so long as the quota of restaurants has not been exceeded, states that the legislature could have limited licenses to clubs in plain language, if it had intended to do so and, therefore, holds that the legislature did not intend to limit licenses to clubs. For the reasons hereinbefore given, we are bound to disagree with that reasoning. An appeal from that opinion was dismissed by the Superior Court (Lithuanian Beneficial Association's Club Liquor License Case, 142 Pa. Superior Ct. 556) for the sole reason that appeals do not lie from the orders of the court under the Liquor Control Act.

It may be significant, however, that the Superior Court, in dismissing the appeal, stated (p. 559) : "In doing so we pass no judgment of affirmance or disaffirmance on the decision and order of the court below." On the other hand, in Spankard's Liquor License Case, 138 Pa. Superior Ct. 251, in which the same principle was applied, the Superior Court said (p. 256) :

"Strictly speaking, the above ruling disposes of the case, but just as the Supreme Court, in the Grime case, supra, [Grime et al. v. Dept. of Public Instruction, etc., et al., 324 Pa. 371] (p. 378) in order 'to avoid future conflicts', discussed the contention of the appellants, so here, in view of the fact that there are conflicting decisions in different courts of quarter sessions, we will give our reasons why we are in accord with the ruling of the court below."

A comparison of the language of the Superior Court in the two cases clearly shows that the Lithuanian Society case cannot be cited as an appellate court case in appellant's favor. The fact that no appeal lies from our decision does not enlarge our power over the acts of the legislature. It simply places an additional responsibility upon our shoulders to arrive at a proper conclusion.

And now, June 30, 1941, appellant's appeal from the order of the Liquor Control Board refusing it a club liquor license is dismissed at its costs.