## Bartek v. Wyoming Valley West School District

*Carmen J. Maffei,* for plaintiffs.

*John J. Dempsey, Jr.,* for defendant.

HOURIGAN, J., March 11, 1970.—This is an action in equity brought by residents and owners of property situated in Larksville Borough, Luzerne County, Pa. Plaintiffs are taxpayers who complain against the final budget adopted May 4, 1967, by defendant, the Wyoming Valley West School District. Said budget included a separate assessment in the amount of six mills on the taxpayers of Larksville Borough to pay a bonded indebtedness incurred by Larksville Borough School District.

Plaintiffs challenge the propriety of the budget adopted by defendant for the fiscal period July 1, 1967 to June 30, 1968, and the related action thereto. They seek to restrain by injunction, preliminary and per-

petual, the levying of the separate assessment in the amount of six mills on the taxpayers of Larksville pursuant to the adoption of the aforementioned budget by defendant. Plaintiffs also seek to restrain the collection of the aforesaid separate six mill tax, and they request the amendment of the aforesaid budget to delete the separate assessment of the six mill tax.

## I. STATEMENT OF PLEADINGS AND ISSUES RAISED

The complaint was filed August 21, 1967, and preliminary objections were filed by defendant on September 11, 1967. The preliminary objections were argued before the court and disposed of by Judge Bigelow by order of May 22, 1968, directing defendant to file a responsive pleading. Defendant filed its answer and new matter on June 12, 1968. On December 16, 1968, plaintiffs filed their reply to new matter. The case was listed for trial. At trial, plaintiffs' counsel admitted on the record all facts pleaded by defendant in its answer and new matter. Plaintiffs offered no testimony or exhibits, and rested only on the question of law raised by the admitted facts.

The issues are:

1. Whether debt contracted for current operating expenses for a period of years prior to September 12, 1961, evidenced by funding bonds issued after September 12, 1961, shall be the exclusive obligation of the district which issued such bonds pursuant to a final decree of court finding the debt to be for current operating expenses, or whether such shall be assumed by the reorganized district?

2. Whether a reorganized district which fails to levy a separate assessment pursuant to the School District Reorganization Act of August 8, 1963, P. L. 564, sec. 3, as amended June 2, 1965, P. L. 86, sec. 1, 24 PS §2-298(b), for the first school year of operation

is precluded from subsequently levying such separate assessment for that year and/or for subsequent years?

## II. FINDINGS OF FACT

1. Plaintiffs are John and Lottie Bartek, 103 West Broadway, Larksville, Pa.; John and Emily O'Kane, R. 360 Vine Street, Larksville, Pa.; Peter and Viola Chorey, 52 Nesbitt Street, Larksville, Pa.; Charles and Anna Bowman, 29 Second Street, Larksville, Pa., residents and owners of real estate situate in the Borough of Larksville, Luzerne County, Pa., and have paid and will pay taxes in the future duly assessed against them as owners thereof, and they bring this action on behalf of themselves and all other taxpayers similarly situated, particularly all members of the Larksville Protective Property Owners Association, since the number of taxpayers is so numerous as to make it impractical for all of them to be joined as parties.

2. Defendant is Wyoming Valley West School District, a reorganized school district consisting of school districts formerly in Forty Fort, Swoyersville, Luzerne, Kingston, Pringle, Courtdale, Edwardsville, Larksville and Plymouth, all in Luzerne County, Pa., with its principal office at 386 Wyoming Avenue, Kingston, Pa.

3. Defendant was established as a school district on July 1, 1966, and prior thereto, from January 15, 1966, to June 30, 1966, began operations through its interim operating committee.

4. May 4, 1967, defendant adopted its final budget and taxing resolutions attendant thereto for the fiscal period July 1, 1967, to June 30, 1968.

5. Said budget included a separate assessment in the amount of six mills on the taxpayers of Larksville.

6. Said assessment was not included in the budget of defendant for its previous fiscal year, July 1, 1966,

through June 30, 1967.

7. The aforesaid separate six mill assessment was included by defendant pursuant to the School District Reorganization Act of 1963, 24 PS §2-298(b).

8. The School District of the Borough of Larksville petitioned the Court of Quarter Sessions of Luzerne County, filed September 8, 1961, to September sessions 1961, no. 465, for authority to fund unfunded debt contracted for current operating expenses in the amount of $106,611.75 incurred prior to September 1, 1961. The preliminary order was granted on September 8, 1961, and the final order was granted September 28, 1961.

9. Pursuant to said order, the School District of the Borough of Larksville floated a bond in coupon form, numbered from one to 106.

10. Larksville School District paid the principal and interest from 1962 through June 30, 1966, as evidenced by coupons numbered one through 46.

11. The bond issue of Larksville Borough School District in question in this action, consists of bonds numbered 47 through 106.

12. All the bonds aforesaid constituted funding issues of debts contracted or incurred for a period of years prior to September 12, 1961.

13. Defendant school district was not apprised of the existence of the aforementioned bond issue until January 1967 upon audit of books of Larksville School District.

14. Plaintiffs are without an adequate remedy at law.

### III. DISCUSSION OF FACTS AND LAW

Our first duty is to inquire into the existence of jurisdiction of equity: Harris-Walsh Inc. v. Dickson City Borough, 420 Pa. 259, 263 (1966). Defendant argues that plaintiffs have an available statutory

remedy in assumpsit in the Court of Common Pleas of Luzerne County under the provisions of the Act of May 25, 1945, P. L. 1050, 72 PS §5511.1 (Local Tax Collection Law, as amended), or, in the alternative, plaintiffs may bring an action in mandamus. We conclude that even if these actions would lie, equity has jurisdiction where the power to levy and collect an assessment is the issue: Young Men's Christian Association v. Reading, 402 Pa. 592 (1961); Cherrie v. Greater Nanticoke Area School District, 40 D. & C. 2d 739, 56 Luz. 241 (1966); and Murman, Etc. v. Duryea Borough School District, 52 Luz. 171 (1962).

Defendant school district would distinguish the Cherrie case from the matter at hand on the basis that in Cherrie the equitable remedy was sought prior to the effective date of the budget therein involved, while in the present litigation plaintiffs waited until after defendant school district had commenced operations, collections and expenditures under the budget here at issue, and thus plaintiffs must proceed for refund under the Local Tax Collection Law.

However, the tax herein sought to be enjoined is an assessment continuing for a period of years into the future until the bonded indebtedness is paid. To preclude a remedy containing injunctive relief, if such is determined to be a proper remedy, would require a lawsuit each time the tax is paid in the future. This is a proper situation for equity to intervene: Baederwood Center, Inc. v. Putney, 390 Pa. 53 (1957). We, therefore, determine that for the purpose of complete justice, the jurisdiction of equity is not precluded.

Defendant asserts that plaintiffs are guilty of laches in pursuing their claim. However, in view of our ultimate decision on plaintiffs' claim, it will not be necessary for us to consider this allegation.

We address ourselves now to the merits of the case.

Pursuant to section 6502(a) of the Act of June 25, 1941, P. L. 159, art. V, Municipal Borrowing Law (1941), 53 PS §6502, as amended, the Borough of Larksville petitioned the Court of Quarter Sessions of Luzerne County seeking authority to "fund an unfunded debt contracted for current operating expenses." The pertinent provision of the act is as follows:

"(a) Whenever any municipality has any unfunded debt, contracted for current operating expenses, which is due and owing and the financial condition of the municipality is such that, in the opinion of the council in the case of cities and boroughs and the corporate authorities in the case of other municipalities, it cannot meet such debt within the fiscal year without an unreasonable curtailment of municipal services or the levy of an excessive tax, they may by petition apply to the court of quarter sessions of the county in which the municipality is situate setting forth the facts. After hearing, on such notice to the municipality and taxpayers as the court may prescribe, the court shall make such order granting authority to fund such unfunded debt contracted for current operating expenses in whole or in part, if it believes the proposed funding will accomplish the relief intended, or refusing to permit the municipality to fund the same as it deems just and equitable. The action of the court shall be final."

A hearing was held on September 28, 1961, on the borough's petition, and subsequently, on September 28, 1961, Judge Shea, using the words of the statute, permitted, by "Final Order of Court," the borough to issue the bonds "to fund its unfunded debt in the amount of One hundred six Thousand Six hundred Eleven and 75/100 Dollars ($106,611.75) contracted for current operating expenses . . ." No appeal was taken from this order and the order became final. In Pittston Debt Funding Case, 172 Pa. Superior Ct.

55, 57 (1952) the Pennsylvania Superior Court set forth the consequence of the final order. The court said:

"The concluding sentence of the section [53 PS §6502(a), para. 1] restricts appellate review to the question of the jurisdiction of the court below and the regularity of its proceedings. 'Where a statute is silent on the right of appeal this Court may review the case in the broadest sense allowed on certiorari; but where an appeal is expressly denied or it is provided that the action of the court below shall be final, our appellate review will be limited to questions of jurisdiction and those relating to the regularity of the proceedings;' Grime v. Department of Public Instruction, 324 Pa. 371, 375, 188 A. 337. See also White Township School Directors Appeal, 300 Pa. 422, 150 A. 744, and Kaufman Construction Co. v. Holcomb, 357 Pa. 514, 55 A. 2d 534. '(T)he merits of the controversy cannot be considered even though the interpretation given to the facts or the law by the . . . court below may have been erroneous': Kaufman case, supra, p. 518."

The question, therefore, whether the debt was for current operating expenses becomes moot, and this court has no alternative but to accept Judge Shea's findings. The findings are not open to any other interpretation or subject to examination or review by another court, including whether any of the detailed unfunded debt would or would not be considered current as of that date.

We now face the question whether the failure of the school district to levy a separate assessment in the first year of operation precludes the school district from levying a separate assessment for that year and/or for subsequent years upon the property in the former School District of Larksville Borough? We believe it does not.

The applicable act of legislature is as follows:

"§2-298 Property and indebtedness and rental obligations of former school districts.

"(a) Except as otherwise provided in this section, all real and personal property, indebtedness and rental obligations to an approved school building authority or nonprofit corporation, if any, of former school districts composing any school district constituted and deemed established pursuant to this subdivision (i) shall become the property, indebtedness and rental obligations of such newly established school district . . .

"(b) All obligations of any component former school district evidenced by funding bonds issued after September 12, 1961, for the purpose of funding unfunded debt contracted for current operating expenses, shall continue to be an obligation of the taxable property within such former component school district and any sinking fund created on account of such indebtedness shall remain the separate sinking fund for such bonds. In levying and assessing taxes for the first school year of operation, the interim operating committee, and in levying and assessing such taxes for each subsequent school year, the board of directors of the newly established school district, shall levy and assess, upon the taxable property within such component former school district for which bonds issued after September 12, 1961, for the purpose of funding unfunded debt contracted for current operating expenses shall be outstanding, a tax in addition to all other school district taxes, in an amount sufficient to discharge the obligation of such component former school district, as set forth pursuant to Section 207 of the Municipal Borrowing Law . . .": Act of March 10, 1949, P. L. 30, art. II, sec. 298, added August 8, 1963, P. L. 564, sec. 3, as amended June 2, 1965, P. L. 86, sec. 1, 24 PS §2-298.

On July 1, 1966, Wyoming Valley West School District was constituted and established as a second class school district composed of nine component former school districts, including Larksville. An "interim operating committee" adopted a budget for the year July 1, 1966, to June 30, 1967. At this time, the committee did not know, nor were they apprised of, the Larksville Borough funded bond issue. They did not become aware of it until January 1967, when the books of Larksville School District were audited.

April 3, 1967, defendant school district approved a proposed budget for fiscal year July 1, 1967, to June 30, 1968, which included an additional six mill levy on Larksville to pay the bonds pursuant to the School District Reorganization Act. This levy was mandatory. On May 4, 1967, the proposed budget was adopted.

The reorganization of school districts is an involved procedure which takes time, initiative, evaluation and hard work. In such a situation, there can be oversights no matter the diligence put into the reorganization. There is a deadline that must be met. In the case at hand, there were nine separate school districts which were merged and the interim committee had to consider the problems of each one of them. They must rely on information secured from the component school districts.

The interim board never was informed of these bonds and, hence, made no provision for them in the fiscal year 1966-67. Being made aware of them, they levied the additional millage on Larksville to pay for the outstanding bonds as they become due.

Not to allow defendant school board to do this, in view of their prompt action when they did discover the debt, would be to penalize defendant and the eight other former school districts and grant relief from the debt to Larksville, which debt Larksville would otherwise be required to assume. Further, if Larksville

were granted relief, the clear purpose of the 1963 amendment to the School District Reorganization Act would be defeated.

We also make mention that even with the six mill increase on the Larksville property holders, their overall millage contribution is reduced by 12 mills from what they paid as an independent school district.

### IV. CONCLUSIONS OF LAW

1. Equity has jurisdiction in this matter.

2. The $106,000 bond issue of November 15, 1961, is an indebtedness which qualifies within the statutory exception of section 298(b), 24 PS §2-298(b) of the School District Reorganization Act so as to remain the obligation of the taxpayers of the Larksville Borough School District, a former component school district.

3. Plaintiffs are not entitled to equitable relief.

### V. DECREE NISI

Judgment is directed to be entered in favor of defendant, Wyoming Valley West School District.