Commonwealth of Pennsylvania, State Board of Funeral Directors *v.* L. Beinhauer & Son Company, Appellant.

Argued October 31, 1975, before Judges WILKINSON, JR., ROGERS and BLATT, sitting as a panel of three.

*J. Sherman McLaughlin*, with him *Johanna G. O'Loughlin*, and *Reed, Smith, Shaw & McClay*, for appellant.

*Edward I. Steckel,* Deputy Attorney General, with him *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, January 27, 1976:

L. Beinhauer & Son Company appeals from an order of the State Board of Funeral Directors (Board) rejecting the licensee's application for two branch office licenses. We affirm.

On June 1, 1921, the appellant corporation received its license to practice undertaking in the Commonwealth of Pennsylvania. At that time it maintained funeral homes at three separate locations in the City of Pittsburgh: downtown on Sixth Avenue, on the South Side on Bradish Street, and on West Liberty Avenue. The downtown office was subsequently moved twice before it was finally closed down in 1930. The appellant was, therefore, maintaining two places of business when the Act of June 10, 1931, P.L. 485, became effective, Section 13 of which stated in part that "no branch licenses shall hereafter be granted any corporation." The South Side location was used for funerals until 1937 and thereafter strictly as an office until 1955 when it was closed down. In 1952, the West Liberty location was destroyed by fire but it had been rebuilt by 1955 and that location has been the sole place of business of the appellant since 1955.

This action was initiated in July of 1968 when the appellant applied for two branch licenses. Pursuant to the application, the Board conducted hearings at which evidence was received, and it issued an order and adjudication containing findings of fact and conclusions of law and refusing the branch licenses applied for. We must affirm this refusal.

The appellant argues that its operation of the three places of business prior to 1931 entitles it to operate at three locations today, and it is true that Section 13 of the Act of June 10, 1931, P.L. 485, while prohibiting the future issuance of branch licenses to corporations, did

nevertheless preserve existing activities by corporate licensees. This so-called "grandfather clause" provided:

> "The provisions of this act shall not be construed as preventing the conducting of the business or profession of undertaking by a corporation heretofore licensed. . . ."[1]

In *Grime v. Department of Public Instruction*, 324 Pa. 371, 188 A. 337 (1936), however, our Supreme Court construed this provision as affording to pre-1931 licensees only such branch office rights as they had under their old licenses. "Renewal gave old licensees the privilege they enjoyed at the time the Act was passed, but no other." 324 Pa. at 380, 188 A. at 341. The applicant for a branch license in *Grime* had held a license which predated the Act of 1931 but, because the applicant had established no branch office prior to the adoption of the Act the Court held that no rights could have accrued under the grandfather clause. "All old licensees who did not have branch places or, having them, desired additional ones, were denied the right to obtain any new branch licenses." 324 Pa. at 380, 188 A. at 341. In *State Board of Undertakers v. Wetzel & Sons, Inc.*, 54 Dauph. 244 (1943), of course, the licensee had operated two branch offices continuously since 1925 and it was consequently held to be entitled to continue these operations subsequent to the passage of the Act of 1931. The licensee's situation here, of course, is distinguishable from *Grime* in that its two branch offices were in fact established prior to 1931 but, unlike *Wetzel,* those offices have not been maintained continuously since that time.

The grandfather clause in the Act of 1931 merely protects "the conducting of the business or profession of undertaking by a corporation heretofore licensed." We

---

1. The Act of 1931 was repealed by the Funeral Director Law, Act of January 14, 1952, P. L. (1951) 1898, 63 P. S. §479.1 et seq.; Section 9, 63 P. S. §479.9, contains a similar clause preserving the rights of existing licensees.

must construe this language as applying only to corporate activities in actual operation in 1931 at the effective date of the Act. As a result, the downtown operation, discontinued by the appellant here in 1930, cannot be held to fall within its purview. Such an interpretation is consistent with the statement in *Grime* that old licensees' privileges under the grandfather clause were limited to those they "enjoyed" at the time the Act of 1931 was adopted. Moreover, the general tendency of the courts has been to favor a strict construction of such grandfather clauses. *See* 4 ALR 2d 662.

As to the South Side location, it was entitled to the protection of the grandfather clause as of passage of the Act of 1931. But with respect to that office, we must pursue our inquiry further to determine whether or not the appellant's right to maintain a branch office there was lost after such use was discontinued and the office had eventually been sold. Although we can find no direct authority on this issue, it would appear that the principles of zoning law relating to the termination of nonconforming uses might aid our analysis, for the policy behind allowing the continuation of a land use which predates a zoning ordinance and which would otherwise violate it is similar to the policy underlying the grandfather clause here. In both situations, activities which have been lawfully conducted prior to the passage of legislation which would render those activities unlawful, are permitted to continue because of the individual's justifiable reliance on the fact that activities lawful when undertaken may be lawfully continued. The zoning law, however, has long recognized the concept that a landowner's right to a nonconforming use may be forfeited upon his abandonment of that use, and we believe that the same principle ought to apply here. Because, therefore, the appellant had discontinued funeral operations at the branch location in 1937, and later sold those premises in 1955 without attempting to conduct branch

office activities there or elsewhere until the present time, it has exhibited during the intervening years an intent to abandon branch office operations so as to have lost any rights it may originally have acquired under the grandfather clause in the Act of 1931.

The appellant alternatively argues that the prohibition against branch offices is unconstitutional because it bears no relation to the legislative exercise of police power. As enunciated in *Grime,* the purpose of the legislation regulating the licensing of funeral directors is "to protect the public health from the dangers attendant upon the inexpert conduct of undertaking by those not qualified by the necessary knowledge of principles of sanitation and disease prevention." 324 Pa. at 381, 188 A. at 341. With this purpose in mind, the court in *Grime* sustained the constitutionality of the prohibition against branch offices and rejected a challenge identical to that launched by the appellants here:

"The Act's purpose is to prevent the use of one license for several establishments, to protect the public from the lack of skill of unlicensed operators acting under the nominal supervision of licensed undertakers. It is true that in some cases the licensee might be able to give full and complete attention to the conduct of the business of branch offices, but it is also possible to conceive that such supervision might, if too widely extended and diffused, be impracticable. This possibility is sufficient to render the practice dangerous. It is not an unreasonable and arbitrary exercise of the police power to require that each undertaking establishment be personally conducted by a licensed undertaker. It is not a question here of prohibiting the mere ownership of two establishments by one person; the question is whether or not one person may conduct and operate two or more subsidiary branches.

\*   \*   \*   \*

"Although such branch offices may be conducted in some instances without injury to the public health, the business is replete with possibilities for the evasion of the licensing provisions or conduct thereunder. The legislature is acting within its power in prohibiting it. A thing not in itself injurious may nevertheless fall under the ban of legislative prohibition because it affords opportunities for the frustration of a purpose well within the admitted governmental power. See Purity Extract Co. v. Lynch, 226 U. S. 192; Commonwealth v. Stofcheck, supra [322 Pa. 513, 185 A. 840 (1936)]. So long as there is some relation between the prohibition against the licensing of new branch offices and the regulation of the business of undertaking to protect the public health, the legislature has the power to determine whether or not such prohibition is desirable. 'In every instance, the details of regulation are for the legislature to determine, not subject to judicial rejection, unless so palpably unreasonable as to suggest that their "real object is not to protect the community, or to promote the general well-being, but, under the guise of police regulation, to deprive the owner of his . . . property, without due process of law." (Citing Mugler v. Kansas, 123 U.S. 623)': Nolan v. Jones, supra, at 129." *Grime, supra,* 324 Pa. at 382-384, 188 A. at 342-343.

The licensee in *Grime,* it might be noted, was a partnership consisting of two persons both of whom were duly licensed undertakers, and yet the Supreme Court upheld the ban against their operating a single branch office in addition to their principal office.

The appellant here points out that the Board has promulgated a regulation to the effect that each branch office (to the extent that such offices still exist under rights acquired through the grandfather clause) shall have a full-time licensed funeral director to act as supervisor and that he may not conduct an establishment of his own.

49 Pa. Code §13.103. This regulation does illustrate the appellant's position that the policy behind the legislation could be met simply by requiring adherence to the requirements of this regulation and without the necessity for prohibiting ownership of more than one place of business by a single license. We cannot agree with the appellant, however, that the promulgation of this regulation has changed conditions so as to render the *Grime* case distinguishable from the one at hand. The court in *Grime* upheld the prohibition against issuance of a branch license despite the fact that each member of the partnership there concerned could have maintained a separate establishment under his individual license and thus could have presumably maintained adequate supervision in each place. Moreover, this is not a situation similar to *Flynn v. Horst*, 356 Pa. 20, 51 A.2d 54 (1947), cited by appellant, where the effect of a statute has changed over the years, thus rendering legislation unconstitutional which might formerly have been considered valid. Here the effect of the statute has remained constant.

We are compelled to follow *Grime* and to uphold the statute's constitutionality. We, therefore, issue the following

ORDER

AND NOW, this 27th day of January, 1976, the order of the State Board of Funeral Directors is hereby affirmed.