## Brandt et al. v. Vaux et al.

*Schnader, Harrison, Segal & Lewis*, for plaintiffs.

*Charles J. Margiotti*, Attorney General; *Elmer T. Bolla*, Deputy Attorney General, and *Abraham J. Levy*, Deputy Attorney General, for defendants.

NEELY, J., January 8, 1951.—This proceeding is in equity and the matter is now before us on the bill of complaint and answer thereto. The parties have stipulated the facts. Plaintiffs seek to enjoin defendants from enforcing or threatening to enforce a certain amendment to the rules and regulations of the State Board of Undertakers of the Commonwealth requiring student apprentices to have two years' practical experience in the undertaking business before going to embalming school. We are asked to make an order declar-

ing that it was beyond the power of the board to adopt and promulgate such regulation.

## Plaintiffs' Bill

Plaintiffs aver that they are undertakers in the Commonwealth, duly licensed by the State Board of Undertakers, and that defendants are members of the board, one of them being the secretary of that board. It is averred that on or about June 22, 1949, defendants adopted and promulgated an amendment to the rules and regulations of the board effective March 31, 1950, providing that no student apprentice shall be registered unless he or she shall immediately upon registration enter into a two-year apprenticeship training period with a licensed undertaker, upon completion of which term he or she may then enter an embalming school. It is averred that the effective date was July 31, 1949, but later that date was postponed to March 31, 1950.

It is set forth that the board has interpreted the amendment to mean that attendance at embalming school must be served after the two-year apprenticeship for the purpose of qualifying as a licensed undertaker. It is further averred that the amendment was not adopted by defendants in the interest of public health, safety and welfare, but for the purpose of reducing the number of persons who may engage in the practice of undertaking in the Commonwealth. The bill alleges that the regulation is invalid for the following three reasons:

1. The regulation violates the due process clause of the fourteenth amendment of the Constitution of the United States, and article I, secs. 1 and 9 of the Constitution of the Commonwealth of Pennsylvania. It is claimed that it deprives plaintiffs of liberty of contract and of their property without due process of law, in that the regulation is arbitrary and unreasonable, and

has no reasonable relation to the policy of the statute or the objects sought to be attained by the act.

2. Although the Act of June 10, 1931, P. L. 485, as amended, provides that student apprentices may have embalming school training, the purported regulation states in effect that applicants for licenses shall have such training after the completion of the apprenticeship. Hence it is contended that the wording of the regulation is not within the language of the act of assembly, since it does not apply to apprentices as stipulated in the act.

3. Section 14 of the Act of July 19, 1935, P. L. 1324, amending the Act of 1931, giving the board power to require embalming school training, constitutes an unconstitutional delegation of legislative power, for the reason that section 14, as amended, fixes no standards governing the quantity or quality of such training, contrary to the provisions of article II, sec. 1 of the Constitution of our Commonwealth. Hence it is claimed that the regulation is an exercise of legislative power improperly delegated to the board, and therefore invalid.

### The Answer

The answer admits that the board promulgated the amendment to the regulation as averred in plaintiffs' bill. It takes issue, however, with plaintiffs' averment of illegality or unconstitutionality of the regulation or the act of assembly. The answer avers that the regulation was in all respects within the provisions of the act requiring an embalming school training of apprentices, and denies that the regulation was intended to apply to applicants rather than apprentices as defined by the act. Defendants deny that plaintiffs are deprived of liberty of contract and of their property without due process of law. The answer avers that the act of assembly was not in violation of the Constitution of Pennsylvania, as pleaded in the complaint. It is par-

ticularly denied that the act constituted an unlawful delegation of legislative authority to the board.

*Findings of Fact*

1. Plaintiff Richard S. Brandt is a resident of Perrysville, Allegheny County, Pa.; plaintiff I. Parker Miller is a resident of Reading, Berks County, Pa., and plaintiff Ronald C. Jones is a resident of Scranton, Lackawanna County, Pa. Each plaintiff is a duly licensed undertaker in the Commonwealth of Pennsylvania.

2. Defendant Norris W. Vaux is Secretary of Health and as such is ex officio a member of the State Board of Undertakers; defendant Howard J. Snowdon is chairman of the board, and defendants Edward S. Blair, Frank Pritchard and W. Judson Dean are the remaining members of the board. Defendant John W. Hartman is secretary of the board. The State Board of Undertakers is a departmental administrative board in the Department of Health.

3. On or about June 22, 1949, defendants adopted and promulgated as an amendment to the rules and regulations of the State Board of Undertakers of the Commonwealth of Pennsylvania, to be effective July 31, 1949, the following requirement, to wit:

"Commonwealth of Pennsylvania

"Department of Health

"State Board of Undertakers

"Harrisburg

"Amendment to the Rules and Regulations

"The following amendment to Section 5 (b-1) and (b-2) was unanimously adopted by the Board at a regular meeting in executive session on Wednesday June 22, 1949:

"(5)   (b)   STUDENT APPRENTICES

"3. No person shall be registered as a Student Apprentice unless and until the applicant shall have first

presented a Pre-Professional Certificate from the Department of Public Instruction showing that he or she is a graduate from an approved high school of this Commonwealth, or has an education equivalent thereto under the Rules and Regulations of the Department of Public Instruction; *and shall immediately upon registration as a Student Apprentice enter into the two year apprenticeship training period, and upon completion of which he or she may then enter an embalming school, duly accredited by this Board, to satisfy the embalming school training requirement."* (Italics supplied.)

As a result of protests, the effective date of the action taken on June 22, 1949, was thereafter postponed to March 31, 1950.

4. Defendants have interpreted their action as set forth in paragraph 3 above to mean that attendance at embalming school after completion of apprenticeship is mandatory and defendants will, subject to any order entered in this case, enforce the rule in accordance with their interpretation.

5. As a result of the protests against the rule, the State Board of Undertakers held hearings on January 9 and 10, 1950, at Harrisburg, on January 11, 1950, at Wilkes-Barre, on January 13, 1950, at Pittsburgh, and on January 14, 1950, at Erie.

6. At the hearing held at Erie, counsel for the board made the following statement:

"In promulgating and adopting the regulation, we felt we were rapidly getting into a position with new apprenticeships and that new undertakers are being licensed in the State of Pennsylvania at a terrific rate, where we had an average of 350 or 400 applicants coming up for examination twice a year.

"With that condition over a period of time, anyone who desires, could take up the apprenticeship, and that was a most untenable situation, and something had to be done to bring some kind of a halt to stop this pro-

cedure. The board feels something had to be done and done in a terrific hurry or the field would sell themselves out of business. They felt they should set up some sort of a barrier. Whatever motivated it—it was a piece of regulation which was intended to bring a halt to this—either to stop them from coming in or to save some people from their own actions because somebody made it look attractive to them.

"They felt they should take the responsibility for a student apprentice, and put it into the hands of the undertakers, so they would be the ones who would have the control for new student apprentices, therefore, to save the apprentices from their own foolishness. They felt he should be apprised of what the situation is before he spent his time and his substance in taking an embalming school course, and then looking for a possible preceptor and then later he would come to the conclusion that wasn't what he wanted. If you let him come in, and register him, and the young man comes in after two or three months and says: 'He thought they were all rich people, drive Cadillacs and so on.' "

7. In 1936 the State Board of Undertakers adopted and promulgated a regulation requiring six months' embalming school training for student apprentices; in 1939 amended the regulation of 1936 by raising the requirement of embalming school training to nine months, and in 1941 the board further amended the regulation and raised the embalming school education requirement to 12 months, which is the length of time now being required by the board for such training.

8. In January 1946 the board amended the original regulation of 1936 by providing that the student apprentice undertaker could elect, at the time he applied for registration as such, whether he would enter his embalming school training, or the two-year apprenticeship training with an undertaker preceptor.

9. On or about June 22, 1949, the original regulation of 1936 was further amended requiring the student apprentice undertaker, immediately upon his registration as such, to enter into the two-year apprenticeship training period with an undertaker preceptor, and thereafter to complete the board's one-year requirement in embalming school training.

10. By rule effective January 1, 1941, and now in effect, the following are educational requirements for student apprentices:

"A twelve-month course which shall include all the following subjects and which shall not be less than 1,440 class hours of actual teaching and laboratory work under the supervision of competent teachers and instructors.

"The minimum hours devoted to each subject shall be as follows and shall be a complete and continuous course:

|  |  | Hours |
|---|---|---|
| "(a) | Embalming (including principles and practice, cosmetology and hairdressing) | 300 |
| "(b) | Anatomy (including physiology, histology, embryology and dissection) | 300 |
| "(c) | Pathology | 120 |
| "(d) | Bacteriology (including hygiene, sanitation and public health) | 180 |
| "(e) | Chemistry (including toxicology, inorganic, organic and physiological chemistry) | 180 |
| "(f) | Restorative Art | 120 |
| "(g) | Mortuary Administration (including Mortuary Law, Bookkeeping, Business Ethics and Funeral Management) | 120 |
| "(h) | Elective subjects | 120 |
|  | "Total | 1,440" |

11. It is dangerous to public health for untrained people to operate in and around dead bodies, there being always present the potentiality of transmission

of communicable disease because of contamination from working with such bodies.

## Discussion

We will first give consideration to plaintiffs' contention that the board's amended regulation 5(b)3, to the extent that it requires a student apprentice immediately upon registration to serve a two-year apprenticeship, to be followed by embalming school training, is unconstitutional as being in violation of due process of law.

The following sections of the Act of June 10, 1931, P. L. 485, as amended by the Act of July 19, 1935, P. L. 1324, 63 PS §§478a-478r, are herein mentioned as being particularly pertinent in the disposition of this question. In section 2 of the Act of 1931, 63 PS §478b, it is provided that a person may make application for an examination and license as an undertaker; and section 3 of the act, 63 PS §478c (d), provides that an applicant shall not be entitled to have such examination unless he has "had practical experience in the business . . . of undertaking for two years continuously as a student apprentice (with a licensed undertaker), and shall have completely embalmed at least twenty-five bodies." In section 14 of the amendatory Act of 1935, 63 PS §478n(a), it is provided that ". . . the board may require an embalming school training of apprentices, in addition to other requirements". The period of embalming school training as required by the board's regulation is presently 12 months.

The Act of 1931, as amended, is a police measure for the purpose of protecting the health and safety of the people of this State, and its constitutionality as such has been upheld in Grime et al. v. Department of Public Instruction, 324 Pa. 371, 381 (1936). It has been held that a statute which purports to be an exercise of the police power must not be arbitrary and unreason-

able or patently beyond the necessities of the case, and that the means which it employs must have a real and substantial relation to the object sought to be attained: Commonwealth v. Zasloff, 338 Pa. 457 (1940) ; Flynn et al. v. Horst et al., 356 Pa. 20 (1947) ; Nolan v. Jones, 263 Pa. 124 (1919) ; Hertz Drivurself Stations, Inc., v. Siggins et al., 359 Pa. 25 (1948). And likewise, any regulation of an administrative body which purports to be in the exercise of police power vested in that agency, must be neither arbitrary or unreasonable, and must be within the policy and purpose of the statute under which it is promulgated.

In White's Appeal, 287 Pa. 259, 265 (1926), the Supreme Court said:

"The power of judicial investigation does not concern itself with the wisdom of the policy emanating from the legislative branch, or whether the best of all possible means of achieving the desired result has been selected. It is concerned only with the questions of whether the statute has a recognized police purpose, and whether it has a reasonable relation to the object to be attained."

In Flynn v. Horst, supra, at page 31, the Supreme Court of Pennsylvania said:

"The reasonableness of a 'police regulation' . . . depends chiefly on the circumstances on which the regulation operates. No police regulation should be allowed to 'interfere with the enjoyment of individual rights beyond the necessities of the case': Reduction Company v. Sanitary Works, 199 U. S. 306, 318."

The regulation in question requires undertakers to engage apprentices with no training in sanitation or disease prevention. Without such training, these student apprentices are required to work in and about dead bodies, and completely embalm 25 such bodies. If embalming school training has any efficacy, it would seem clear that such training should precede, or at least

be concurrent with, the practical experience that the student receives as an apprentice in the undertaking business. It does not seem reasonable to require that a person work about dead bodies without any theoretical training in chemistry, sanitation and embalming, for example, and then to require him to have this theoretical training in these subjects after he has completed his practical work. Clearly, from a health and safety standpoint, it would be far better to have a person work about dead bodies who is well grounded in the theoretical knowledge of those arts and sciences that are essential to the proper and safe conduct of the undertaking business.

This regulation says that the theoretical training shall be received after the practical experience has been obtained. Such a requirement is contrary to the educational practice in other fields where some knowledge of the profession or occupation is first acquired through study of an appropriate curriculum. "Book learning" usually precedes practical experience, and unquestionably the practitioner or artisan is better qualified in his field for having had that learning.

It is difficult to conceive how such a regulation can have any reasonable relation to the health and safety of the community. On the contrary, it seems to us that the regulation might well be fraught with a health hazard, since it is encouraging inexperienced students to work in a field that obviously requires certain skill and knowledge in the interest of safety.

It is indicated by the record that the purpose of the regulation was to restrict the number of persons entering the business of undertaking. It was argued that the regulation was promulgated in the interest of aiding applicants in determining whether they liked the undertaking business before making a further investment of their time and money. A regulation promulgated for either of these purposes must be considered

as unreasonable and arbitrary. Such a regulation bears no relation to the health or safety of our people, but rather is an attempt to impose arbitrary restrictions on the business of undertaking.

In Grime et al. v. Department of Public Instruction, supra, the Supreme Court said:

"The purpose of the Act (Act of 1931, as amended) was not to impose restrictions upon a trade or business-calling as such, but to protect the public health from the dangers attendant upon the inexpert conduct of undertaking by those not qualified by the necessary knowledge of principles of sanitation and disease prevention."

Any regulation which transcends the police power under which it is promulgated is necessarily invalid: Stark v. Wickard, 321 U. S. 288, 309 (1944).

We feel that this regulation does transcend the provisions of the Act of 1931, as amended, and that it bears no real or substantial relation to the health, safety and welfare of the people of this Commonwealth. The amended regulation in question not only restricts undertakers in their liberty of contract, but it requires them to accept the services of inexperienced persons who have no knowledge of the principles of sanitation and disease prevention. Since the Act of 1931 was passed to protect the public health from the dangers attendant "upon the inexpert conduct of undertaking", the amended regulation tends to defeat the very purpose of the act.

In our view, the amended regulation has no reasonable connection with the policy of protecting the public health. We conclude, therefore, that the regulation violates the fourteenth amendment of the Constitution of the United States, and article I, secs. 1 and 9, of the Constitution of this Commonwealth.

Plaintiffs also maintain that this amended regulation must fall because there was no authority in the

board to promulgate it. Plaintiffs claim that the amendment of 1935 to section 14 relative to embalming school training fixes no standards governing the quantity or quality of such training. It is contended that in this respect the statute contained an unconstitutional delegation of legislative power, contrary to the provisions of article II, sec. 1, of our Constitution, which reads as follows: "The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives." Plaintiffs contend that since section 14, as amended, violates the foregoing provision of our Constitution, the amended regulation 5($b$)3, to the extent that it is predicated on that section, must necessarily fall.

The act in question provides that the board "may require an embalming school training of apprentices". It is to be observed that the statute permits the board in its discretion to determine what constitutes sufficient embalming school training. Nothing is said in the act as to the length of that training, the number of hours of instruction, the course of instruction, or even whether any graduation or certification is necessary.

The wide extension of administrative agencies in this country has brought about great development in the law, resulting in extensive powers being vested in such agencies. Our Constitution, however, forbids the delegation of legislative power to administrative bodies. There are many cases in which our courts have held that the legislature has acted within its proper bounds when it has passed statutes of an administrative or regulatory nature, and has delegated to administrative boards or commissions the power to determine the existence of a set of facts which will bring the law into operation. The statute must be certain and definite in its meaning and must contain fixed standards by which the administrative agency is to be governed, and

administrative action must be exercised within the limitations laid down in those standards.

The amendment of 1935 to section 14 virtually permitted the board to fix its own standards with respect to embalming school training, and it appears from the record that the board did just that. In 1936 by regulation the board required six months of such training. In 1939 the requirement was nine months, and in 1941 and thereafter the requirement has been 12 months. At the present time the record shows that the board requires a total of 1,440 hours in embalming, anatomy, pathology, bacteriology, chemistry, restorative art, and other prescribed subjects. Under section 14, as amended, the board, if it saw fit, could further increase the period of training or decrease it at will.

In Holgate Bros. Co. et al. v. Bashore et al., 331 Pa. 255 (1938), the Supreme Court invalidated a wage and hour law because it delegated to an administrative agency the power to make exceptions in certain hardship cases. The Supreme Court, in speaking of the delegation of authority, at page 260 said:

". . . The legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards or commissions, must strictly adhere and by which they are strictly governed."

And at page 263 the court said:

"If the Legislature fails, however, to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad its attempt to delegate is a nullity."

In Bell Telephone Company of Pennsylvania v. Driscoll et al., 343 Pa. 109 (1941), the Supreme Court, in affirming this court's decision, held that section 702 of the Public Utility Law, requiring the approval of the Public Utility Commission of contracts between utilities and affiliates, was unconstitutional on the ground

that it constituted an unlawful delegation of legislative power to the commission. The Supreme Court, at page 114, said:

". . . Where the legislature establishes primary standards and then delegates to an administrative body the power to determine some fact or state of things upon which it makes or intends to make its own action depend, it is the legislature which has legislated and not the administrative body."

And continuing, at page 116, the court stated:

". . . If the legislature fails, however, to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad its attempt to delegate is a nullity: Schechter Poultry Corp. v. United States, 295 U. S. 495; Panama Refining Co. v. Ryan, supra; O'Neil v. Insurance Co., 166 Pa. 72."

In Panama Refining Co. et al. v. Ryan et al., 293 U. S. 388, 426 (1935), Chief Justice Hughes, speaking for the Supreme Court of the United States, stated:

"Moreover, the Congress may not only give such authorizations to determine specific facts but may establish primary standards, devolving upon others the duty to carry out the declared legislative policy, . . . 'to fill up the details' under the general provisions made by the Legislature."

See Interstate Commerce Commission v. Goodrich Transit Company, 224 U. S. 194, 214 (1912).

Sometimes the courts are able to gather a definite standard or criterion for the guidance of an administrative agency by resorting to the context of the entire act: Texas et al. v. United States et al., 292 U. S. 522 (1934); Federal Radio Commission v. Nelson Bros. Bond & Mortgage Co., 289 U. S. 266 (1931). But we do not find in the statute before us anything which acts as a standard or criterion for the board in determining the requirements for embalming school training.

Generally speaking, the statutes in Pennsylvania which govern the licensing of persons engaged in professions and occupations prescribe standards for the guidance of administrative bodies. The Medical Practice Act of June 3, 1911, P. L. 639, as amended, 63 PS §405, requires that an applicant for a license must have completed certain specified courses in some reputable and legally incorporated medical school or college, and must have appropriate certification from the dean or other officer.

The statute relating to the licensing of pharmacists, Act of May 17, 1917, P. L. 208, sec. 4, as amended, 63 PS §316, requires graduation from a reputable school of pharmacy recognized by the State Board of Pharmacy, and provides for practical experience in the matter of retailing, compounding or dispensing drugs, chemicals and poisons, and of compounding physicians' prescriptions under the personal supervision of a registered pharmacist.

The act relating to osteopaths, Act of March 19, 1909, P. L. 46, sec. 8, as amended, 63 PS §262, requires a four graded course of not less than 32 weeks of not less than 35 hours each, of actual work in didactic, laboratory and clinical studies.

A license in optometry is granted only to those who are graduated from an approved school or college of optometry upon satisfactory completion of a course of not less than three years: Act of March 30, 1917, P. L. 21, sec. 5, as amended, 63 PS §233.

Registered nurses are required to have been graduated from a duly accredited training school which gives at least a two-year course of instruction, or have the equivalent instruction in different schools and hospitals, and to be graduated therefrom, during which two-year period the nurses must have received practical and theoretical training in surgical and medical

nursing: Act of May 13, 1927, P. L. 988, 63 PS §202, as amended.

Barbers are by statute required to attend barber schools for at least nine months: Act of May 2, 1949, P. L. 862, sec. 1, 63 PS §553.

Veterinarians are required to have a diploma from a school conferring a degree of doctor of veterinary medicine or other established veterinary degree: Act of April 27, 1945, P. L. 321, sec. 3 (c), 63 PS §506-3 (c).

These are but a few examples that illustrate the proposition that the legislature usually fixes at least some standards to which the administrative boards must adhere and by which they must be governed in such matters. No criterion, however, is set up in the amendment of 1935 relative to embalming school training. The legislature failed to place any limitation whatsoever on the power which it delegated to the board in this respect. The board was left to its own devices to fix its own standards.

In Hoff v. State, 39 Del. 134, 197 Atl. 75 (1938), a Delaware statute which required licenses for those practicing beauty culture was ruled unconstitutional. In order to qualify for a license, the applicant was required to show registration as a student, and also two years' apprenticeship or "training . . . in a beauty school duly registered by the Board . . .". Chief Justice Layton, speaking for the Superior Court, in holding that the act constituted an unlawful delegation of authority, said:

"The act nowhere defines the term 'beauty school'. It makes no mention of the subjects and matters as to which knowledge and proficiency are required; and it is silent as to system, course, scope or length of instruction and training in such school. Graduation is not required, nor even a minimum length of attendance demanded. The law contents itself with the vague

and indefinite phrase, 'and has had training in a beauty school duly registered by the Board'."

See also Beard et al. v. State Board of Embalmers et al., 111 Cal. App. 559, 295 Pacific 1052 (1931); Abelson's, Inc., et al. v. New Jersey State Board of Optometrists et al., 5 N. J. 412, 75 A.(2d) 867 (1950).

In our judgment, the amendment of 1935 to section 14, vesting in the board power to require embalming school training, delegated to the board the power to determine what should be the requirements of embalming school training in order to entitle a person to be licensed as an undertaker, and provided the board with no guide or criterion by which it could govern its administrative acts. It follows from the foregoing considerations that section 14, vesting the board with authority to require such embalming school training, is unconstitutional as being in violation of article II, sec. 1, of our Constitution. And since this section of the act is unconstitutional, it also follows necessarily that the portion of the amended regulation 5(b)3 predicated thereon, requiring immediate apprenticeship to be followed thereafter by embalming school training, is invalid.

Defendants contend that plaintiffs are not in the class of persons entitled to challenge the validity of the act of assembly or of the regulation. With this contention we are in disagreement. Plaintiffs are duly licensed undertakers, and as such are directly affected by the provisions of the act of assembly and the regulation. Both the act and the regulation constitute an interference with their business. This regulation has a bearing on public health, and anything that affects the health of the community in relation to the business of undertaking is a concern of plaintiffs. In St. Bartholomew's Protestant Episcopal Church Charter, 260 Pa. 284, 288 (1918), the Supreme Court said:

"Constitutional questions can be raised . . . , by one affected through actual operation of the act."

In our view, these plaintiffs are affected through the actual operation of the act and the regulation in question.

In view of our conclusion that the regulation is unconstitutional as violating the due process clause, and also article II, sec. 1, of the Constitution of Pennsylvania, it is unnecessary to discuss herein the additional contention of plaintiffs that the regulation is in contravention of the statute in that it requires attendance at embalming school after the completion of the apprenticeship.

In view of the foregoing, we state the following

### Conclusions of Law

1. The Act of June 10, 1931, P. L. 485, as amended by the Act of July 19, 1935, P. L. 1324, is a police measure designed for the protection of the health and safety of the people of this Commonwealth.

2. The amended regulation 5(b)3 of the State Board of Undertakers, to the extent that it requires student apprentices immediately upon registration to enter into an apprenticeship of two years with a licensed undertaker, and thereafter to enter an embalming school, is arbitrary and unreasonable.

3. The amended regulation, to the extent that it requires such apprenticeship to be served before embalming school training, is not a valid regulation in the interest of the health and safety of the people of this Commonwealth.

4. The amended regulation, to the extent that it requires such apprenticeship to be served before embalming school training, is invalid as being in violation of the due process clause of the fourteenth amendment of the Constitution of the United States, and article I, secs. 1 and 9, of the Constitution of Pennsylvania.

5. Section 14 of the act of assembly, providing that "the Board may require an embalming school training of apprentices", constitutes a delegation to the State Board of Undertakers of the duty and power to require such training.

6. The act of assembly did not prescribe any requirements for embalming school training, nor did it set forth any standards by which the board could determine what that training should be.

7. Under the provisions of the act there was an unconstitutional delegation of legislative power to the State Board of Undertakers, contrary to the provisions of article II, sec. 1, of the Constitution of Pennsylvania.

8. It was beyond the power of the State Board of Undertakers to adopt and promulgate the amended regulation 5(b)3 with respect to immediate apprenticeship to be followed by embalming school training, since this regulation was predicated upon an unlawful delegation of legislative authority.

## Decree Nisi

And now, January 8, 1951, it is ordered, adjudged and decreed that defendants be and they are hereby enjoined and restrained from enforcing or threatening to enforce that certain portion of the amended regulation 5(b)3 of the State Board of Undertakers promulgated on or about June 22, 1949, hereinabove identified particularly in finding of fact no. 3, which provides that a person is not to be registered as a student apprentice unless the applicant "shall immediately upon registration as a Student Apprentice enter in the two year apprenticeship training period, and upon completion of which he or she may then enter an embalming school, duly accredited by this Board, to satisfy the embalming school training requirement"; that portion of their regulation hereinabove quoted in this decree is herewith declared null and void. The prothono-

tary is directed to enter this decree nisi and forthwith notify the parties to this proceeding, or their counsel. If no exceptions are filed within 10 days after the entry of this decree, a final decree will be entered. The costs shall be paid by defendants.