## State Board of Funeral Directors v. Bennett

Abraham J. Brem Levy, for appellant.

Robert S. Robbins, for Commonwealth.

HERMAN, J., November 7, 1966.—This is an appeal from a decision of the State Board of Funeral Directors, made after notice and a formal hearing, suspending for a period of one year the license of appellant, Paul L. Bennett, to practice funeral directing in the Commonwealth of Pennsylvania. The board's order, entered August 18, 1965, was based upon independent findings of fact and conclusions of law which adjudged appellant to be guilty of violating section 7 of the Act of January 14, 1951, P. L. (1952) 1898, 63 PS §479.7, in that he conducted funerals at places other than that where he was authorized to do so by the State Board of Funeral Directors, without the consent and approval of the Lacy Funeral Home, wherein he was the registered supervisor.

Section 7 of the Funeral Director Law supra, provides, inter alia:

"A license shall authorize *the conduct of the profession* at the particular place of practice so designated *and no other, and only by the particular person designated*".[1]

Appellant appeared before the board on May 6, 1959, and was registered, pursuant to section 8 of the Funeral Director Law, as supervisor for Mrs. Beatrice M. Lacy, the widow of a deceased licensee. Consequently, sections 7 and 8 must be examined in conjunction with one another in order to determine the nature and extent of the activities and conduct which were authorized by the license granted to appellant.

---

[1] Italics ours throughout unless otherwise indicated.

Section 8 of the Funeral Director Law provides, inter alia:

"The practice carried on by a licensee's estate or widow shall be under the supervision of a *licensed* funeral director employed on a full time basis, who *shall not conduct* any other funeral business in his own name nor be *directly or indirectly connected* with any other funeral establishment".

That appellant, as the registered supervisor of the Lacy Funeral Home, was authorized to conduct the profession from said home, the place designated on his license, and no other, is clear and unequivocal upon a reading of the above-quoted portions of the act. Furthermore, the board, in accordance with section 16 of the Funeral Director Law, enacted section 12.6 of the regulations, which provides, in part:

"No activity in connection with funeral directing shall be performed by such funeral director unless it is on behalf of the practice of the widow or estate for which such person has accepted the function of supervisor".

This regulation is clearly in furtherance of the legislative mandate that no supervisor be directly or indirectly connected with any other funeral establishment. Consequently, if appellant *conducted* funerals from any establishment other than the Lacy Funeral Home, or carried on any *activity* that was not on behalf of that establishment, he was guilty of violating the act.

Appellant's first contention is that the record is lacking in any substantial evidence that would sustain the board's findings of fact, conclusions of law and order. We do not agree. The record amply supports the findings, and the conclusions of law based on such findings are proper. Actually, appellant himself admits that he conducted certain specific funerals at establishments other than the Lacy Funeral Home

while he was the registered supervisor there. The real essence of appellant's position is that he was authorized by the board to conduct funerals on his own time when his services were not required at the Lacy Funeral Home.[2] Mrs. Lacy's testimony was also to the effect that, according to her understanding and interpretation of the board's ruling at the time appellant became her registered supervisor, Mr. Bennett was permitted to conduct and operate his own activities, providing they did not interfere with the business of the Lacy Funeral Home, and that he was always available when his services were required there. On the other hand, the Secretary of the Board of State Funeral Directors testified that while the board was aware that the Lacy Funeral Home's business was insufficient to demand all of Mr. Bennett's time, he was not permitted to conduct the profession on his own, and other services or activities he performed would have to be contracted through the Lacy Funeral Home. Any other ruling by the board would have been clearly contrary to the legislative direction that the conduct of the profession must be from the place designated on the license, and the registered supervisor of a widow of a deceased licensee must be employed on a full time

---

[2] N. T. 16, 17 of hearing held April 7, 1965, on direct examination of appellant:

"Q. And, during that hearing, will you tell the Board, please, as to your best recollection what happened concerning the time which would be required on the exclusiveness of your association with Mrs. Lacy?

"A. The Board ruled that Mrs. Lacy did not do enough funerals to keep me in full time, and they gave me permission to do anything pertaining to the funeral business in the State of Pennsylvania as long as I had Mrs. Lacy's permission and was available to her at all times.

"Q. Now, from that time on to the time when Mrs. Lacy retired in March, 1963, did you operate in that manner?

"A. I did".

basis. Further, regulation 12.6, supra, proscribes any activities by such supervisor unless on behalf of the practice of the widow or estate and, while appellant could perform certain professional activities short of conducting funerals on his own, his services had to be contracted through the Lacy Funeral Home. The record clearly contains substantial evidence on which the board could find appellant in violation of the act.

Appellant contends that the board improperly concluded that the legislative intent was to prohibit the conduct of the profession from any place other than that noted on the license; he maintains that the legislature merely intended to preclude a funeral director from operating more than one place of business. We cannot agree with this strained interpretation which appellant places upon the language of section 7. The plain meaning of the statutory language convinces us that the position of appellant is untenable. The statute provides that "A license shall authorize the conduct of the profession at the particular place of practice so designated *and no other*". The phrase "conduct of the profession" encompasses all activities related to funeral directing, and is not merely a prohibition against operating branch establishments.

Appellant next contends that his right to practice his profession was unduly restricted by the board under the guise of protecting the public health. He contends that the board's interpretation of the act of 1951, the Funeral Director Law, and of regulation 12.6 of the board constitute an improper exercise of the police power in that they bear no reasonable relationship to the harm to be prevented and, consequently, are violative of the due process clause of the Fourteenth Amendment to the Constitution of the United States; and article I, section 9 of the Constitution of the Commonwealth of Pennsylvania.

The law regarding the limits upon a State's exer-

cise of its police power is clear, but application of that law to particular legislation may often present a difficult task (Gambone v. Commonwealth, 375 Pa. 547, 550-52 (1954)):

"Probably the most important function of government is the exercise of the police power for the purpose of preserving the public health, safety and morals, and it is true that, to accomplish that purpose, the legislature may limit the enjoyment of personal liberty and property. It is also true, as stated in Commonwealth v. Zasloff, 338 Pa. 457, 460, 13 A. 2d 67, 69, that the police power has been juridically extended to many fields of social and economic welfare. But, as likewise there stated, the power is not unrestricted; its exercise, like that of all other governmental powers, is subject to constitutional limitations and judicial review. By a host of authorities, Federal and State alike, it has been held that a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts".

While the courts are aided by a presumption of the constitutionality of legislative acts, the reasonableness of the regulation in dispute must be carefully examined: 7 P. L. Encyc. §23 (1958). There is no question that the business of funeral directing is a proper

subject for the exercise of the police power: Grime v. Department of Public Instruction of the Commonwealth of Pennsylvania, 324 Pa. 371 (1936); Commonwealth v. Patsone, 231 Pa. 46 (1911), but the real question before us is whether the provisions of section 7, as interpreted by the board and regulation 12.6, are properly within the scope of regulating the profession of funeral directing and bear a reasonable relationship to the harm to be prevented.

The purpose of the act was not to impose restrictions upon the profession as such, but to protect the public health against disease resulting from improper sanitation practices by those who are not qualified or are inexpert in the practice of the profession. The legislative intent in requiring the practice at the particular place designated, and no other, and only by the particular person designated, was to place the responsibility for the conduct and operation of an establishment upon the person authorized by license to conduct the establishment and to facilitate the enforcement of the act. Consequently, any violations of the act may be attributed directly to the person responsible for the operation and management of the establishment, and this provision promotes the legislative purpose by increasing the likelihood that licensee's attention and supervision will be devoted to the practice conducted under the authority of his license.

Appellant, as the registered supervisor of the Lacy Funeral Home, was the person responsible for maintaining the standards desired and required by the law, and by providing that his services be contracted through the Lacy Funeral Home, the board helped to assure that the required time and attention be devoted to the operation of that establishment.

In Grime v. Department of Public Instruction, supra, the Act of June 10, 1931, P. L. 485 (the earlier act concerning undertaking), was attacked. In holding

that the regulation of the business of undertaking is a proper exercise of the police power, the Supreme Court, in considering the constitutionality of the section of the act which prohibited *branch licenses*, went on to say, pages 383-84:

"A thing not in itself injurious may nevertheless fall under the ban of legislative prohibition because it affords opportunities for the frustration of a purpose well within the admitted governmental power. [Citing cases] So long as there is *some relation between the prohibition* against the licensing of new branch offices and the regulation of the business of undertaking to protect the public health, the legislature has the power to determine whether or not such prohibition is desirable. 'In every instance, the details of regulation are for the legislature to determine, not subject to judicial rejection, unless so palpably unreasonable as to suggest that their "real object is not to protect the community, or to promote the general well-being, but, under the guise of police regulation, to deprive the owner of his . . . property, without due process of law" (Citing Mugler v. Kansas, 123 U. S. 623.)' . . . ."

We believe that the quoted statement is equally applicable to sections 7 and 8 of the Act of 1951 being considered here.

Appellant also contends that his constitutional rights were violated by the atmosphere surrounding the hearing before the board. He maintains that the fact that a board member disqualified himself indicates the presence of bad faith, capricious action, and abuse of power which would warrant setting aside the adjudication as violative of the due process clause of the United States Constitution. We have carefully read the entire record made by the State Board of Funeral Directors in this matter and conclude that appellant has no basis for this contention. The hearings were fairly conducted, and appellant and his counsel

510

were granted every opportunity to present their case, and they did so fully.

We find no error in the proceedings before the board, and appellant's exceptions must be overruled and the appeal dismissed.

We, therefore, enter the following

ORDER

And now, November 7, 1966, the exceptions filed by Paul L. Bennett, appellant, to the findings of fact and conclusions of law of the State Board of Funeral Directors, dated August 18, 1965, are overruled, and his appeal from the adjudication therein is dismissed.